IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| TRUSTEES OF THE UTAH CARPENTERS' AND CEMENT MASONS' PENSION TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>NEW STAR/CULP L.C.,<br><br>Defendant. | ORDER AND<br><br>MEMORANDUM DECISION<br><br><br><br>Case No. 2:07-CV-699 (TC) |

This case arises under the Multiemployer Pension Plan Amendments Act (MPPAA), 29 U.S.C. §§ 1381-1461, an amendment to the Employee Retirement Income Security Act (ERISA), which generally requires an employer that withdraws from a multiemployer pension plan to pay "withdrawal liability." Plaintiff is the entity of Trustees of a multiemployer pension plan who brought suit to recover withdrawal liability from Defendant employer New Star/Culp LLC ("NSC"). NSC challenges liability for the first time before this court and seeks leave pursuant to Rule 13(f) of the Federal Rules of Civil Procedure to file a common law counterclaim. Trustees argue that NSC is barred from contesting liability here when it failed to submit its challenge to arbitration. After considering the parties' cross motions for summary judgment, this court concludes that because NSC failed to participate in arbitration, it waived not only the ability to challenge withdrawal liability before this court, but the counterclaim it seeks leave to assert against Trustees.

1

**BACKGROUND**

The following material facts are undisputed. The Utah Carpenters' and Cement Masons' Pension Trust ("Trust") is a multiemployer pension plan administered by the Trustees. (Pl.'s Mem. Supp. Mot. Summ. J. 1; Def.'s Reply Mem Supp. Mot. Summ. J. 2.) In March 1998, two Utah companies, New Star General Contractors and Culp Construction Company, formed a Utah limited liability company named New Star/Culp LLC ("NSC") to perform a ski resort construction project in Deer Valley, Utah. Pursuant to the terms of at least one collective bargaining agreement, NSC was required to contribute to the Trust for the purpose of providing pensions and other benefits to covered employees. (Pl.'s Mem. Supp. Mot. Summ. J., 1; Def.'s Reply Mem Supp. Mot. Summ. J., 2.)

NSC contributed to the Trust from July 1999, through September 2002, at which point NSC apparently ceased doing business. In September 2002, NSC contributed $184,80 to cover what it contends was the last 176 hours of covered work performed by employees. (D.'s Mem. Supp. Summ. J. and Opp'n Pl.'s Mot. Summ. J, iii.)

In November 2006, the Trustees sent NSC a withdrawal liability demand totaling $185,256, to be paid in thirty-three monthly payments plus one final payment. (Pl.'s Mem. Supp. Mot. Summ. J., Ex. 5, 4.) The letter included pages of the details of the Trustees withdrawal liability calculation and indicated that "[f]ailure to begin payment . . . as required may constitute a default." (Id.) NSC did not submit a request for review of this determination as allowed by the MPPAA. NSC did not initiate or participate in arbitration to challenge withdrawal liability as required.

After NSC failed to submit payment as provided by the terms of the demand letter, the Trustees filed this timely action in September 2007, to recover withdraw liability amounts due

2

and owing.  See 29 U.S.C. § 1451(f).  NSC and the Trustees filed cross motions for summary judgment.  NSC also motioned this court for leave to file a counterclaim, which the Trustees opposed.

## ANALYSIS

**I.     CROSS MOTIONS FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when the record demonstrates "no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Kellogg v. Metro. Life Ins. Co., 549 F.3d 818, 825 (10th Cir. 2008).  The court must consider the evidence and any reasonable inferences in the light most favorable to the nonmoving party.  Mosier v. Callister, Nebeker & McCullough, 546 F.3d 1271, 1275 (10th Cir. 2008).  Assuming summary judgment is proper, the court must first consider whether NSC was required to submit to arbitration before challenging withdrawal liability here.

**A.     The NSC's Failure to Arbitrate is Fatal to Its Challenge to Withdrawal Liability.**

A few years after enacting ERISA to regulate private pension plans, Congress grew wary that a significant number of multiemployer pension plans were suffering from severe financial hardship.  As employers withdrew from these plans, the contribution base shrank, which in turn compromised their financial stability.  To address these problems, Congress enacted the MPPAA, which "sought to reduce the [economic] burden of employer withdrawals . . . by requiring 'that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the pension plan.'"  Cent. States Se. and Sw. Areas Pension Fund v. T.I.M.E.-DC, Inc., 826 F.2d 320, 321 (5th Cir. 1987) (quoting Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 725 (1984)).  Pursuant to the MPPAA, plan sponsors determine when

3

withdrawal has taken place, calculate the amount of withdrawal liability, notify the employer, and collect amounts due. Id.

Consistent with the circumstances surrounding the MPPAA's passage, "Congress did not intend to create a new, broad category of litigation that would force benefit plans to spend their assets on court costs and attorneys fees." Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. BES Services, Inc., 469 F.3d 369, 374 (4th Cir. 2006). Rather, Congress created a "streamlined process for resolving disputes over withdrawal liability determinations, thereby limiting dispute-resolution costs and preserving plans' assets." Id. The MPPAA requires that any dispute:

> 'concerning a determination [of withdrawal liability] shall be resolved through arbitration.' If no arbitration proceeding has been initiated pursuant to [section 1401(a)(1) ], the amounts demanded by the plan sponsor ... shall be due and owing . . . [and the sponsor] may bring an action ... for collection.'

In re Centric Corp., 901 F.2d 1514, 1518 (10th Cir. 1990) (quoting 29 U.S.C. § 1401) (citations omitted); see also Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp, 522 U.S. 192, 197 (1997). Either party may initiate arbitration and may seek judicial review of an arbiter's determination pursuant to 29 U.S.C. § 1401(b).

Despite the MPPAA's clear arbitration requirement, the failure to arbitrate is not an absolute jurisdictional bar; rather it presents an issue of failure to exhaust administrative remedies, which NSC and the Trustees correctly suggest. E.g.,Centennial State Carpenters Pension Trust Fund v. Woodworkers of Denver, Inc., 515 F. Supp. 1063, 1068 (D. Colo. 1985); see also McDonald v. Centra, Inc., 946 F.2d 1059 (4th Cir. 1991); I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus., 727 F.2d 1204, 1209 (D.C. Cir. 1984); 60A Am. Jur. 2d

4

Pensions § 751 (2008). Thus, pursuant to a few exceptions, a court has discretion to hear an challenge regarding withdrawal liability even though the dispute was never arbitrated. Notably, the circuits do not appear to agree as to the scope and breadth of these exceptions.[1]

The District of Colorado refused to consider in Centennial State Carpenters an unarbitrated challenge to withdrawal liability where the employer contested the amount owed. By trying to raise such a challenge for the first time in federal court, the court concluded that the employer was:

> trying to circumvent the Act's clear and unambiguous requirement that all disputes involving the amount of arbitration first be submitted to arbitration. To permit it to raise now as an afterthought the calculation issue would contravene not only the express language of the Act, but also the intent of the legislature.

Id. at 1068-69. The excerpted language suggests that courts in the Tenth Circuit only excuse the failure to arbitrate in exceptional circumstances. The Tenth Circuit recognized the "severity" of this arbitration requirement, but indicated, "[n]evertheless, [that] Congress deemed that this harsh remedy was appropriate when it enacted the MPPAA and we decline to second-guess its

---

[1] For example, the Fifth Circuit made clear that "[t]hese exceptions apply . . . only in extraordinary circumstances." Central States, 826 F.2d at 329; see also Republic Indus. v. Central Pa. Teamsters Pension Fund, 693 F.2d 290, 294 (3d. Cir. 1982). The Fourth Circuit outlined three of several exceptions to the requirement that parties exhaust administrative remedies, which include "instances where (1) the dispute is a matter of statutory construction; (2) the utilization of administrative procedures would cause irreparable injury; and (3) the resort to administrative procedures would be futile." McDonald, 946 F.2d at 1063. And the D.C. Circuit in Stockton Tri Industries , a case on which NSC relies, considered an unarbitrated challenge because it presented exclusively questions of law and requiring exhaustion would neither lead to the "application of superior expertise nor promote judicial economy." 727 F.2d at 1209-11. Significantly, however, subsequent cases have "interpreted the Stockton Tri Industries analysis to mandate a 'narrowly cabined' set of exceptions to the general rule of arbitrate first. For example, the existence of an issue of statutory interpretation alone will not justify bypassing arbitration." Combs v. Leishman, 691 F. Supp.424, 427 (D.D.C. 1988) (citation omitted).

judgment . . . ." Trs. of Colo. Pipe Indus. Pension Trust v. Howard Elec. & Mech., Inc., 909 F.2d 1379, 1386-87 (10th Cir. 1990).

### 2. The Arbitration Requirement Applies to Disputes Regarding "Withdrawal."

NSC argues that this court should ignore the harsh remedy for failure to arbitrate in this case because of the nature of its challenge. The core issue in its challenge, according to NSC, is whether it actually withdrew.

Ordinarily an employer that withdraws from a qualifying plan incurs withdrawal liability. NSC argues, however, that because it is covered by the MPPAA's building and construction industry exception, it did not withdraw from the plan as a matter of law and thus, could not have incurred withdrawal liability. (Def.'s Mem Supp. Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J., 2.) The Trustees contend that the question of whether NSC withdrew presents a challenge to withdrawal liability, which needed to be arbitrated per the plain language of the MPPAA. Consequently, the Trustees urge this court to refuse to consider NSC's challenge.[2]

The Trustees are correct; a challenge regarding whether an employer actually withdrew from a trust presents an inquiry that is central to a withdrawal liability determination, and it must be arbitrated. Cf. Colo. Pipe, 909 F.2d at 1386 ("[A]rbitration may be bypassed in cases involving constitutional questions, questions of statutory interpretation outside the MPPAA, and allegations of fraud" (citations omitted).).

---

[2]Admittedly, the facts of this case present a unique situation in that it appears that the Trustees may not have had an actual legitimate basis for imposing withdrawal liability. The affidavits submitted by NSC suggest that the Trustees might have previously concluded that NSC had not incurred withdrawal liability. It is unclear whether the Trustees did or even could change their minds. The question remains why NSC failed to arbitrate such a clear and seemingly simple challenge as required. NSC received the demand letter and pages of calculations. The court must consider, as other courts have done, the policy implications of allowing NSC to circumvent the MPPAA's arbitration requirement.

Consider, for example, Lyons v. Raymond Rosen & Co., No. 93-1514, 1994 WL 129955 (E.D. Pa. April 12, 1994).  Lyons involved a challenge to withdrawal liability based whether complete withdrawal actually occurred.  See id. *5 n.11.  After the defendant employer ceased business operations, laid off its employees, and stopped contributing to the plan, counsel for the plan issued a demand for withdrawal liability.  The employer made three payments pursuant to the demand letter before the employer's counsel requested a review of the withdrawal liability calculation.  Id. at *3.  As in this case, the employer never submitted to arbitration, but simply stopped payment.

When the employer in Lyons attempted to challenge liability before the district court based on the argument, as in this case, that it never actually withdrew, the court refused to consider the dispute.  The court simply concluded that the employer had "waived its right to contest the assessment of withdrawal liability by its failure to seek arbitration in a timely manner."  Id.  Relevant to NSC's arguments, the court concluded that "[w]hether the [employer] completely withdrew from the Plan is . . . an essential step in the assessment of withdrawal liability."  Id. *5 n.11.  The court cited the plain language of 29 U.S.C. § 1401(a)(1), which requires that "any dispute between an employer and the plan sponsor of a multiemployer plan . . . shall be resolved through arbitration."  Id.  The court concluded that the employer waived the ability to contest liability and that, by default, the employer withdrew from the plan.  1994 WL 129955 at *3.

Similarly, the employer in ILGWU National Retirement Fund v. Empire State Mills Corp., 696 F. Supp. 885 (S.D.N.Y. 1988), sought to contest withdrawal liability for the first time before the district court.  The plan sent a demand letter to the employer, notifying it of its withdrawal liability and explaining that the employer had ninety days to request a review of the

determination and that any dispute must be resolved through arbitration. The employer did not request review or submit to arbitration. As in this matter, the plan filed suit in federal court after the employer failed to submit payment. After the employer failed to appear, the court entered default judgment. In considering the employer's motion to set aside the default judgment, the court considered whether the employer could challenge withdrawal liability without having participated in arbitration. Id. at 889. Relevant to our purposes, the court concluded that "disputes concerning a determination that a defendant completely withdrew from a plan is a dispute within the ambit of MPPAA's arbitration provision" and not eligible for an exception. Id. at 890-91. The court explained, as follows:

> [T]here is a dispute over a material question of fact-at what point did [the employer] withdraw from the Fund so as to be subject to withdrawal liability. Thus, an arbitrator skilled in pension and labor matters would have superior expertise to offer and the Court would have benefited (sic) from the proper development of the factual record. Moreover, a dispute as to whether and when Empire withdrew from the plan involves the interpretation of 29 U.S.C. § 1383, and thus, falls squarely within Congress' mandate to arbitrate.

Id. at 891. The court concluded that because the employer failed to follow the statutory scheme for challenging withdrawal liability, it had waived any defenses that it might have.

The employer in Combs v. Leishman, 691 F. Supp. 424 (D.D.C. 1988), argued that it had no duty to arbitrate because it had ceased operations prior to the MPPAA's effective date. Although this is not the precise issue before this court, it is sufficiently analogous to be instructive. The court explained in considering the employer's argument that:

> Congress established the arbitration requirement to enable disputants to take advantage of an arbitrator's superior expertise and to encourage non-judicial resolution of disputed matters relating to withdrawal liability. The question of when an employer has completely withdrawn within the meaning of 29 U.S.C. § 1383(a) so as to trigger

> liability <u>strikes this court as precisely the kind of dispute contemplated by Congress in enacting the MPPAA's dispute resolution scheme</u>. To conclude otherwise would create a situation whereby an employer merely by unilaterally declaring itself to have withdrawn from a plan prior to the effective date could forego the arbitration step entirely. Such a conclusion is entirely inconsistent with Congress' 'arbitrate first' policy.

<u>Id.</u> at 429 (emphasis added).

Finally, the employer in <u>Rao v. Prest Metals</u>, 149 F. Supp. 2d 1 (E.D.N.Y. 2001), demanded arbitration after the deadline had already passed. As in this case, the employer argued before the district court that it could not be responsible for withdrawal liability because it never withdrew from the plan. <u>Id.</u> at 5. Discussing various Second Circuit cases, the court rejected this argument and explained that if the employer:

> wished to contest the determination that it withdrew from the plan, it was required to do so in arbitration. The dispute over that determination was, and is, almost entirely a factual dispute as to whether the employer . . . was still operating under, and contributing to, the plan. . . . To whatever extent the dispute involved some statutory interpretation as to the meaning of 'withdrawal,' that, too, was the subject of arbitration.

<u>Id.</u> at 8 (emphasis added).

For purposes of considering whether NSC needed to have submitted to arbitration, the facts of this case sufficiently mirror the facts of the four proceeding cases. Here, NSC received the demand letter from Trustees as required by the MPPAA, which included pages of calculations and data relevant to the determination. Based on the presentation of the facts by the parties, NSC failed to request a review of withdrawal liability as allowed by statute. NSC also failed to submit its dispute regarding withdrawal liability to arbitration. (NSC makes no effort to now explain these failures.) Only after the Trustees filed suit in federal court did NSC seek to

challenge withdrawal liability. In doing so, NSC is attempting to circumvent the statutory scheme clearly outlined by the MPPAA.

Despite NSC's representations, courts do not liberally apply exceptions to the MPPAA's arbitration requirement. Rather, as the Tenth Circuit fully recognizes, the consequence of the failure to arbitrate are harsh and severe, and this would not be the case if the remedy could be easily or frequently set aside. NSC needed to sufficiently persuade this court that its case presented one of the rare instances where an exception should made, which it failed to do.

NSC rests its case on the argument that arbitration was unnecessary because its very challenge to withdrawal liability is that it never actually withdrew, a challenge that presents exclusively legal questions and issues of statutory interpretation. Granted the circumstances of this case are a bit unusual as evidenced by the underlying substance of NSC's motion for leave to file a counterclaim, but courts have dismissed this argument before. As explained in Lyons, determining whether NSC actually withdrew from the plan is an essential step in the assessment of withdrawal liability, which falls well within the plain language of the arbitration requirement. Determining whether a particular employer is eligible for the building and construction industry exception can be a taxing inquiry that is both factually and legally intensive.[3] Just because an employer is generally associated with building and construction does not mean that the building and construction exception should apply. An arbitrator skilled in pension and labor matters would have had superior expertise to offer as observed in Empire State Mills. And this court would have undoubtedly benefitted from a thoroughly developed factual record as also observed

---

[3]In nearly all of the cases that consider the application of the specific building and construction industry withdrawal provision, the parties participated in arbitration before proceeding to federal court. In the other cases, such as Trustees of the Laborers' Local 310 Pension Fund v. Able Contracting Group, Inc., No. 1:06 CV 1925, 2007 WL 2238361 (N.D. Ohio Aug. 1, 2007), the failure to arbitrate was fatal to the challenge.

in Empire State Mills. NSC waived its right to contest the assessment of withdrawal liability by failing to seek arbitration.

## II.   NSC'S MOTION FOR LEAVE TO FILE A COUNTERCLAIM

Finally, this court must consider NSC's motion for leave to file a counterclaim pursuant to Rule 13(f) of the Federal Rules of Civil Procedure. NSC argues that the Trustees failed to conduct a good faith inquiry before imposing liability as to whether the employer had actually withdrawn from the plan, and that Crown Clothing Co. v. Papale, 854 F. Supp. 316 (D.N.J. 1994), supports a cause of action against the Trustees in light of this failure.

The last day for NSC to have amended its pleadings, as the Trustees correctly assert, was June 16, 2008. (Scheduling Order, 2.) NSC argues that the court should allow it to file a counterclaim some eight months later because it "only recently discovered the common law ground regarding a trustee's duty to conduct a good faith inquiry" and "adding the counterclaim at this stage in the litigation results in no prejudice to the trust." (Def.'s Mem. Supp. Mot. Leave File Counterclaim, 10.) The Trustees oppose NSC's motion as a "back-door attempt to blame the Trust for [NSC]'s failure to timely request review or arbitrate its withdrawal liability disputes." (Pl.'s Reply Mem. Opp'n Def's Mot. Leave File Counterclaim 13.)

This court need not consider the merits of NSC's motion pursuant to Rule 13(f), however. By failing to arbitrate, an employer waives "any defenses to collection actions that could properly have been heard before the arbitrator." Colo. Pipe, 909 F.2d at 1385; see also Trs. of the Laborers' Local 310 Pension Fund v. Able Contracting Group, Inc., No. 1:06 CV 1925, 2007 WL 2238361 (N.D. Ohio Aug. 1, 2007) (dismissing in its entirety counterclaim filed by employer because counts should have been arbitrated, including a claim that the employer was eligible for the MPPAA's building and construction industry exception).

11

In its proffered counterclaim, NSC argues that Trustees would have known that the employer did not withdraw as a matter of law if they had properly executed their duty as fiduciaries and conducted an inquiry. NSC could have raised this argument before the arbiter. Sufficient relevant facts have long been available. Further, the argument is well within the scope of NSC's already mentioned defense to liability. This is a challenge that needed to be arbitrated. When NSC failed to arbitrate as required by the MPPAA, it waived the counterclaim it seeks leave to file.

Moreover, even had NSC not waived its counterclaim, the court is not satisfied that NSC made a sufficient showing under Rule 13(f). In considering what constitutes excusable neglect, "courts have looked, inter alia, to the good faith of the claimant, the extent of the delay, and the danger of prejudice to the opposing party." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 392 n. 10 (1993). Particularly relevant to this case, the Tenth Circuit affirmed a district court's denial of a defendant's motion to amend its answer to assert a counterclaim considering the "inconsistent statements in the defendants' motions[;] their failure to file the counterclaim was a tactical decision and not simply a mistake by counsel as to the need to file within the scheduling order deadline." SIL-FLO, Inc. v. SFHC, Inc., 917 F.2d 1507, 1518 (10th Cir. 1990). NSC conceded that it had not just learned about Crown Clothing, as originally represented in the pleadings, but rather cited to the case in a brief submitted to the Trustees in November 2007, just two months after the lawsuit was filed. (Pl.'s Sur-Reply, 2.) Thus, the reasons that originally supported NSC's failure to file a counterclaim have changed since the employer initially filed its motion. This inconsistency suggests that NSC's failure to file the counterclaim is due to something other than mere mistake or oversight. See id. at 1518.

**ORDER**

For the foregoing reasons, the Trustees' motion for summary judgment in granted (Docket No. 14); NSC's cross-motion for summary judgment is denied (Docket No.18); and NSC's motion for leave to file a counterclaim is denied (Docket No. 21.).

DATED this 9th day of February 2009.

BY THE COURT:

TENA CAMPBELL
Chief Judge